**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION, CANTON**

---------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Case No. 17-61735 |
| SCI DIRECT, LLC | : | |
| | : | Chapter 11 |
| | : | |
| Debtor and | : | Chief Judge Russ Kendig |
| Debtor-in-Possession | : | |
| | : | |
| (Employer Tax I.D. No. 27-1695346) | : | |

---------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Case No. 17-61736 |
| SUAREZ CORPORATION INDUSTRIES | : | |
| | : | Chapter 11 |
| | : | |
| | : | Chief Judge Russ Kendig |
| Debtor and | : | |
| Debtor-in-Possession | : | |
| | : | |
| (Employer Tax I.D. No. 34-1132690) | : | |

---------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Case No. 17-61737 |
| RETAIL PARTNER ENTERPRISES, LLC | : | |
| | : | Chapter 11 |
| | : | |
| Debtor and | : | Chief Judge Russ Kendig |
| Debtor-in-Possession | : | |
| | : | |
| (Employer Tax I.D. No. 27-1695537) | : | |

```
----------------------------------------------------------x
In re                                      :   Case No. 17-61738
MEDIA SERVICE CORPORATION                  :
                                           :   Chapter 11
                                           :
Debtor and                                 :   Chief Judge Russ Kendig
Debtor-in-Possession                       :
                                           :
(Employer Tax I.D. No. 34-1185822)         :
----------------------------------------------------------x
```

**MEMORANDUM IN SUPPORT OF MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE; (B) AUTHORIZING DEBTORS TO OBTAIN SECURED POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE; AND (C) APPROVING AND AUTHORIZING DEBTORS TO ENTER INTO RELATED LOAN DOCUMENTS**

## I. INTRODUCTION

The Debtors Suarez Corporation Industries and SCI Direct, LLCentered into credit agreements with their primary prepetition secured lender, Nancy Suarez (the "Prepetition Lender"). The Debtors executed promissory notes and security agreement with Prepetition Lender on or about April 15, 2016, as those notes may have been modified or amended from time to time, under which the Debtor borrowed in excess of $20,496,358.55 from the Prepetition Lender. The Prepetition Lenders' promissory notes, amendments, and security agreement are attached to the Motion as Exhibits A, B, and C.

To secure the prepetition obligations to the Prepetition Lender, the Debtors granted to Prepetition Lender a security interest in the Debtor's property (the "Collateral") including but not limited to:

      a.     accounts receivable, inventory, work in progress, and raw materials;

      b.     furniture, fixtures, and equipment; and

      c.     the Debtor's remaining tangible and intangible property.

138372

The Prepetition Lender holds the first priority security interest in the above listed collateral.

## II.    LAW AND ARGUMENT

### 1. Introduction

Section 363 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code") and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizes the Court to enter interim and final orders authorizing the debtor to use cash collateral (as that term is defined in section 363(a) of the Bankruptcy Code).

Section 363(c)(2) provides that the Debtors may use the Prepetition Lender's cash collateral with their agreement or upon proof of adequate protection, as that phrase is defined in section 361 of the Bankruptcy Code, to the Prepetition Lender. Section 363(c)(2) states in pertinent part that:

> The Trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

In this case, the Debtors may use the Prepetition Lender's cash collateral because adequate protection is provided to the Prepetition Lender as described below and because the Prepetition Lender has consented to the Debtors' use of Cash Collateral.

### 2.    Adequate Protection

Section 361 of the Bankruptcy Code provides that adequate protection may be provided by a cash payment or periodic cash payments, "an additional or replacement lien", or relief

138372

constituting the "indubitable equivalent" of the creditor's interest. The concept and purpose of "adequate protection is to insure that the secured creditor receives the value for which he bargained.'" Martin v. United States of America, et al. (In re Martin), 761 F.2d 472, 474 (8d' Cir 1985) (citations omitted).

One method of providing adequate protection is a replacement lien on what has been described as "soft collateral". See, In re Dynaco Corporation, 162 B.R. 389, 394 (Bankr. D. N.H. 1993). Soft collateral was described by the Dynaco court as raw materials, work-in-process, inventory, and accounts receivable. Id. at fn. 3. In Dynaco the court analyzed a floating or replacement lien on soft collateral over a period long enough to evaluate the question of whether the secured creditor is, or is not, being exposed to a substantial danger of a permanent decline in the level of the soft collateral supporting "its floating lien." Dynaco at 394. Furthermore, when this issue is raised early in a reorganization, the debtor will be permitted to continue in business if the debtor makes a "solid" evidentiary showing to support its projections. Id. In short, to determine the adequacy of an equity cushion, the stability of the collateral, the likelihood of reorganization, and the credibility of the Debtor's proposal for furnishing adequate protection must be examined.

For example, in Mbank Dallas, N.A. v. O'Connor (In re Connor), 809 F.2d 1393 (10th" Cir. 1987), the court authorized the debtor to use $721,000 of cash collateral to drill three new gas wells that were expected to produce revenues with present value of $3,674,000. Finding that the secured creditor was adequately protected by the debtor's excellent prospects of success and the potential value of the new revenues, despite the inherent risk of drilling dry holes, the court held that "[i]n order to encourage the Debtor's efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection

138372

standard. " Id. at 1398 (citations omitted). See also, In re 495 Central Park Avenue Corp., 136 B.R. 626 (Bankr. S.D.N.Y. 1992) (projected property improvements constituted adequate protection when rental income from lease conditioned on improvements would increase value of real estate by at least $800,000); In re Sheehan, 38 B.R. 859 (Bankr. D.S.D. 1984) (court allowed cash collateral to be used in exchange for replacement lien on crops to be grown with the cash, relying on evidence that debtor's prospects for a profitable crop were good). In this case, the Debtor will provide adequate protection to the Lenders through a replacement lien on the Debtor's soft collateral.

3.      Adequate Protection Provided by the Debtors to the Prepetition Lender

Adequate protection proposed by the Debtors is a "package" of a replacement lien and additional liens. Permitting the Debtors to utilize cash collateral will have the dual effect of enhancing the Lender's protection serving a necessary role in the Debtors' reorganization efforts. As the Debtors' Interim Budget demonstrates, the Debtors' use of inventory to generate new accounts receivables and cash will enhance the Lender's position, and moreover, will allow the Debtors to reorganize and restructure their finances or consummate a sale of their assets. Cash and accounts receivable will increase at a rate greater than the Debtors' use of cash collateral during the period the Debtors continue to operate their business. Absent use of cash collateral, the Debtors would be force to immediately cease operations and liquidate their assets thereby reducing the value to be available for the benefit of the Debtors' creditors. The law fully contemplates this flexible position in evaluating the Debtors' ability to provide adequate protection.

4.      The Commercial Reasonableness Standard

138372

In terms of valuing the Lender's collateral, the Debtors' property may be valued using a "going concern" approach as opposed to a liquidation model. Many courts, in valuing collateral pursuant to section 506(a) of the Bankruptcy Code, have applied the "commercial reasonableness" standard enunciated in In re American Kitchen Foods. Inc., 2 B.C. D. 715 (Bankr. D. Me. 1976):

> Where collateral is used or produced . . . by a going business which offers reasonable prospects that it can continue, the value of the collateral is equitable with the net recovery realizable from its disposition as near as may be in the ordinary course of the business.
>
> Consistency in collateral valuation obviously does not mean that collateral will be assigned the same value throughout the proceedings as at their commencement, but merely that the most commercially reasonable disposition practicable in the circumstances should be the standard universally applicable in all cases and at every phase of each case.

Id. At 721-22. See, e.g., Sutton v. Bank One, Texas, N.A. (In re Sutton), 904 F.2d 327, 329-30 (5th Cir. 1990) (going concern value); Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.), 727 F.2d 1017, 1020 (11th Cir. 1984) (value for purposes of adequate protection was determined to be the wholesale value because that was the "amount which the creditor would receive by its customary or commercially reasonable means of disposition"); In re Beker Industries Corp., 58 B.R. 725, 737-38 ("the appropriate method of valuation . . . is going concern or fair market value"); In re Phoenix Steel Corp., 39 B.R. 218, 224-25 (D. Del. 1984) (value depends on the facts of the case, insuring "the secured creditor receives in value essentially what he bargained for"). To the extent that the Lender contends that the value of her collateral should be based on a liquidation approach, that approach should be rejected.

6

138372

The Debtors' use of the Prepetition Lender's cash collateral should be permitted as requested in the Motion. In this instance, the Prepetition Lender has agreed to permit the Debtors' use of cash collateral in exchange for adequate protection in the form of a post petition lien in the same validity and priority as her prepetition security interests. Further, by allowing the Debtors to continue in operation, the value of the Prepetition Lender's collateral will be preserved and enhanced over its liquidation value if the Debtors are forced to shut down. No further adequate protection is required for the Prepetition Lender's interest in the Debtors' property.

Courts in other cases have determined that a replacement lien on post-petition collateral may constitute adequate protection for consumption of a lender's prepetition collateral. See, In re LTV Steel Co., Inc., 274 B.R. 137, 286 (Bankr. N.D. Ohio 2001) ("use of the *pre-petition* receivables will inevitably lead to an increase in the value of *post-petition* receivables and inventory"); In the Matter of Continental Airlines, Inc., *et al.*, 134 B.R. 536, 544 (Bankr. D. Del. 1991) (increase in value of one part of lender's collateral offset reduction in value of other collateral); and In re Vanas, 50 B.R. 988 (Bankr. E.D. Mich. 1985) (increase in value of certain collateral offset decrease in value of other collateral). Based upon the facts of this case and the authority cited herein, the Court should authorize the Debtors' use of the Prepetition Lender's cash collateral.

As shown in the Debtors' Interim Budget, the Debtors' use of cash collateral will result in continued creation in the post-petition period of inventory and accounts receivable—all of which to be subject to a post-petition lien proposed in favor of the Prepetition Lender. Consequently, the Prepetition Lender is adequately protected for the Debtors' use of her collateral by the granting of a replacement lien in the Debtors' post-petition property to the same extent granted to

138372

the Prepetition Lender by her existing loan and security documents attached to the Motion.

The Debtors have been offered by the Prepetition Lender a certain credit facility up to $250,000.00 for use in the post-petition period. The Debtors have agreed with the Prepetition Lender that in exchange for providing post-petition financing, the Debtors would grant the Prepetition Lender first priority liens on their unencumbered property, subordinate liens on its encumbered property, and administrative expense priority for her financings. Section 364(c) of the Bankruptcy Code permits all the requests made by the Prepetition Lender.

The Debtors have sought other financing and have been unable to obtain any other financing on a secured or unsecured basis. Accordingly, secured post-petition credit is permitted by the Bankruptcy Code and is necessary for the Debtor to continue their operations.

## III.  CONCLUSION

For the foregoing reasons, the Debtors respectfully request that the Motion be granted and that the Court order the authorization of the use of cash collateral, debtor in possession financing, and any other and further relief that this Court deems just and proper.

Respectfully submitted,

/s/ Anthony J. DeGirolamo
Anthony J. DeGirolamo (0059265)
3930 Fulton Dr., Ste. 100B
Canton, Ohio  44718
Telephone:  (330) 305-9700
Facsimile:  (330) 305-9713
E-mail:  ajdlaw@sbcglobal.net

PROPOSED COUNSEL FOR THE
DEBTORS AND DEBTORS IN
POSSESSION

138372